# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| CHRISTIAN GARCIA-ALVAREZ, on behalf of himself and those similarly situated, <br><br> Plaintiffs, <br> v. <br><br> FOGO DE CHAO CHURRASCARIA (PITTSBURGH) LLC, *et al.*, <br><br> Defendants. | CIVIL ACTION FILE NO: <br><br> 4:21-cv-124-ALM |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RULING THAT PURPORTED ARBITRATION AGREEMENTS ARE INVALID AND UNENFORCEABLE AND TO AUTHORIZE MAILING OF CORRECTIVE NOTICE AND POSTING OF ORDER**

Plaintiff Christian Garcia-Alvarez, on behalf of himself and those similarly situated, files this instant Memorandum in Support of their Motion for Ruling that the Purported Arbitration Agreements are Invalid and Unenforceable and to Authorize the Mailing of Corrective Notice and Posting of this Court's Order.

## I.     INTRODUCTION

In a bold attempt to undermine the authority of the Court, Fogo de Chao (hereinafter collectively referred to as "Defendants") circumvented this Court's well recognized jurisdiction to manage counsel's contact with the putative collective by

unlawfully communicating with them. Specifically, while this putative class action case was pending, Defendants sent to all their employees a "Mutual Arbitration Agreement", attached hereto as **Exhibit A**, providing that virtually all employee disputes, including specifically those involved in this case, would be subject to individual arbitration and could not be pursued in a class action or in Court.  In doing so, Defendants (1) failed to advise the Court or Plaintiffs' Counsel about these communications; (2) failed to inform the potential collective members of the impact signing the Arbitration Agreement would have on their collective rights in this lawsuit; and (3) most importantly, failed to provide a clear and unambiguous opportunity to reject the Mutual Arbitration Agreement.

Defendants' actions amount to a violation of the putative class members' substantive rights under 29 U.S.C. § 216(b) and Section 8 of the National Labor Relations Act; and are calculated for the sole purpose of intimidating the putative class members in this case and preventing them from asserting their right to collectively bargain and recover wages to which they are lawfully entitled. Most importantly, Defendants are attempting to directly interfere with the swift administration of justice in the instant case.

Accordingly, Plaintiffs respectfully request that this Court enter and Order prohibiting Defendants from any further intimidating or coercive conduct or

communications effective immediately, ruling that the purported arbitration agreements are invalid and unenforceable and to authorize the mailing of a proposed corrective notice attached hereto as **Exhibit B**, and posting of this Order granted by the Court.

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A. Defendants' Mutual Arbitration Agreement and Communications with Putative Class Members are Coercive in Nature and Should be Invalid and Prohibited.

Defendants' "Mutual Arbitration Agreement" and communications with potential class members in this case are reprehensible and the Court has authority to prohibit future threats. Although a defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs, district courts are empowered with broad discretion to limit the nature of the communications between a party and putative class member. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193,1201–03 (11th Cir.1985) (recognizing district court's authority to police class member contacts and to prohibit defendant from engaging in unsupervised, unilateral communications with plaintiff class members to solicit exclusion requests from Rule 23 class); *Jones v. Casey's General Stores*, 517 F.Supp.2d 1080, 1088 (S.D. Iowa 2007) ("[T]his Court has relatively broad discretion in limiting communications with putative collective members when such communications cross

the boundaries of propriety, including when the communications are unbalanced, misleading, or factually inaccurate.") (emphasis added); *Maddox v. Knowledge Learning Corp.*, 499 F.Supp.2d 1338, 1342–43 (N.D. Ga. 2007) (observing that district courts in § 216(b) actions rely on broad case management discretion to allow pre-notice communications "while actively limiting misleading statements in such communications") (emphasis added); *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) ("As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions.").

In exercising this discretion, however, and in consideration of the protections afforded by the First Amendment, the Supreme Court has held that courts "may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened" and must give "explicit consideration to the narrowest possible relief which would protect the respective parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (citation omitted). Therefore, to be entitled to relief from contacts by an adverse party of prospective class members, a movant must show (1) "that a particular form of communication has occurred or is threatened to occur" and (2) "that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." *Cox Nuclear Medicine v. Gold Cup Coffee* Services, Inc., 214

F.R.D. 696, 697–98 (S.D. Ala. 2003); *Garcia v. TWC Admin., LLC*, 2015 WL 1737932, at *3 (W.D. Tex. 2015).

Here, Defendants' "Mutual Arbitration Agreement" is abusive communication with putative class members that amount to coercion and an improper attempt to prevent class members from joining this litigation. *See Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1206 (11th Cir.1985); *Sjoblom v. Charter Communications, LLC,* 2007 WL 5314916, *3 (W.D. Wis. Dec. 26, 2007) ("Abusive practices that district courts have considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; contain false, misleading or confusing statements; and undermine cooperation with or confidence in class counsel."); *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) ("Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to ... encourag[e] class members not to join the suit."); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D.Tex.1994) (noting that communications to class members "urging them to disassociate themselves from the suite have also been held improper"); see generally 5 Newberg on Class Actions, at § 15:9 ("Defendants ... may not give false

or misleading information or attempt to influence class members in making their decision whether to remain in the class.") (citation omitted).

Defendants' "Mutual Arbitration Agreement" specifically lists this case as one of a group of five cases for which claims cannot be brought as a class action. (Exh. A, Par. 5.) The "Agreement" says it is binding **whether or not employees in fact agree to it** by signing the document. It provides in paragraph 8, "If Individual accepts or continues employment or other association with the Company, such employment or other association shall constitute acceptance of the terms of this Agreement and this Agreement shall apply to Individual and the Company, regardless of any request for a confirming signature and regardless of whether Individual or a Company representative signs or electronically acknowledges this Agreement." No description of the allegations in this case or what class members would lose by enforcement of the "Agreement" is included.

Defendants' "Mutual Arbitration Agreement" is coercive in nature and unjustly usurps this Court's power to manage communications with class members. Defendants' efforts to foreclose participation in a class action by trying to impose an arbitration agreement on potential class members, after a class action has been filed, has been repeatedly rejected by the courts. For example, in *Piekarski v. Amedysis Illinois, LLC*, 4 F.Supp.3d 962 (N.D. Ill. 2013), the court was confronted

with a virtually identical scheme. As the court in *Piekarski* noted, "Of particular concern to courts is whether 'a party has made misrepresentations to class members or has attempted to discourage class members from participating in the class. [Citations omitted.]'" Confronted with a scheme just like this one, the court in *Piekarski* found the solicitation of arbitration agreements from class members to be abusive and misleading. It held the arbitration agreement in that case to be invalidated as it applied to class members in that litigation, directed defendant to provide plaintiff the names, addresses, and e-mail addresses of class members who were sent the agreement, and authorized plaintiff to send a corrective notice at defendant's expense. A similar ruling was issued by the court in *Jimenez v. Menzies Aviation*, No. 15-cv- 02392-WHO, 2015 WL 491427 (N.D. Cal. Aug. 17, 2015). As the court wrote in that case, at *6:

> Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with members' rights. *See, e.g., O'Connor v. Uber Tech, Inc*., No. 12-cv-3826 EMC, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (invalidating arbitration agreement imposed before class certification where imposing agreement risked interference with putative class members' rights); *Balasanyan v. Nordstrom, Inc*., 2012 WL 760566, at *1-2, 4 (S.D.Cal. Mar 8, 2012) (declining to enforce arbitration agreement imposed during pendency of putative class action); *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 252-54 (S.D.N.Y. 2005) (refusing to enforce arbitration agreement instituted after putative class action was filed as it might mislead class members).

Defendants' "Mutual Arbitration Agreement" was nothing short of gamesmanship intended to intimidate current employees, prevent them from joining this case, and thwart the just and speedy resolution of this action. The only just remedy is a ruling from this Court finding that the purported arbitration agreements are invalid and unenforceable.

**B. Corrective Notice and Posting of Granted Order is Warranted.**

Courts have ordered a variety of remedial measures for misleading and improper communications, including prohibiting further ex parte communications, issuing corrective notices, extending the opt-in period, and awarding attorneys' fees and costs. *See, e.g., Belt*, 299 F.Supp.2d at 669–70 (ordering all of the above); *Williams v. Sake Hibachi Sushi & Bar, Inc.*, 2018 WL 4539114, at *6 (N.D. Tex. 2018) (ordering corrective notice, costs, and fees); *Veliz v. Cintas Corp.,* 2004 WL 2623909, *3 (N.D. Cal. Nov.12, 2004) (ordering a defendant to issue and pay for a corrective notice). Where an FLSA defendant has acted in a manner clearly intended to chill participation in a collective action or putative collective action, courts have routinely ordered that the class members receive corrective notice, in order to attempt to quell the chilling effect of such conduct. *Stransky v. HealthONE of Denver, Inc.,* 2013 WL 856520, at *7 (D. Colo. March 7, 2013) (ordering issuance of court-drafted corrective notice to putative class); *Villa v. United Site Services of*

*California, Inc.*, 2012 WL 5503550, at *15 (N.D. Cal. Nov. 13, 2012) ("because employees were not told that signing the declarations could affect their ability to recover in this lawsuit, a corrective notice, informing the employees that they still have a right to participate even if they signed a declaration, is warranted."); *Wright v. Adventures Rolling Cross Country, Inc.,* 2012 WL 2239797, at *6 (N.D. Cal. June 15, 2012); *Paz v. Piedra*, 2012 WL 121103, at *14 (S.D.N.Y. Jan. 12, 2012). This case is no different and a corrective notice must be issued by Defendant.

Furthermore, an identical issue was addressed in the matter of *Abdul-Rasheed v. Kablelink Commc'ns, LLC*, No. 8:13-cv-879-T-24 MAP (M.D. Fla. Nov. 25, 2013). In this FLSA collective matter, Defendant Kablelink introduced an arbitration agreement to potential class members after the lawsuit had been filed in an attempt to intimidate potential class members and prevent them from pursuing their FLSA rights. After filing a Motion for Miscellaneous Relief and Corrective Notice, the Court in *Abdul-Rasheed* determined it would not condone Defendants' disguised attempt to force their cable installers to waive their right to opt into this currently pending collective action by threatening their income. In its following order, the Court granted Plaintiffs' Motion for Miscellaneous Relief and ordered corrective notices be sent to affected employees. Plaintiff respectfully request that the same relief be granted here.

Plaintiffs further request that the Court require the posting of any Order granting this Motion at each of Defendants' work location where putative class members may be present. Plaintiffs' requests are "appropriate to effectuate the purposes of section 215(a)(3) of [the FLSA]." *See e.g.*, *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518-19 (N.D. Cal. 2010) (Court invalidated opt-out forms in wage and hour class action, under California wage and hour law, and required that corrective notice be sent to putative class members, where employer undermined process of class action by obtaining opt-out forms from its employees through use of coercion and threats; presented opt-out forms to workers during required, one-on-one meetings with managers during work hours, at the workplace, and failed to provide copies of the opt-out forms to workers to take away with them). Plaintiff specifically requests that a copy of the Corrective Notice be sent to all putative class members, regardless of whether they have executed Defendants' Waiver. *See Williams*, 2018 WL 4539114, at *6 (noting that corrective notices are "one of the most common forms of relief that courts grant after finding that communications were misleading or coercive").

### III.   CONCLUSION

The unauthorized "Mutual Arbitration Agreement" notifying potential class members that they will be bound to arbitrate all employment claims, including the claims that are the subject of this case, is an unwarranted effort to prevent class members from participating in this case and an unjustified interference with their rights. Plaintiffs respectfully ask this Court to remedy this action by ordering relief similar to the relief ordered by the court in *Piekarski* and *Abdul-Rasheed*: the Court should declare these arbitration agreements, as they effect the proposed class in this case, void, invalid, and unenforceable; authorize mailing of the proposed corrective notice, attached as attached hereto as Exhibit B at Defendants' expense; order Defendants to provide Plaintiffs' counsel with a list of the names of class members and their last-known residence addresses and e-mail addresses to facilitate mailing of the corrective notice; and further request that the Court require the posting of any Order granting this Motion at each of Defendants' work location where putative class members may be present.

*Signatures on the following page.*

Respectfully submitted, this the 9th day of September 2021.

|  |  |
|---|---|
| **THE LEACH FIRM, P.A.**<br>631 S. Orlando Avenue, Suite 300<br>Winter Park, FL 32789<br>Telephone: 407-574-4999, Ext. 403<br>Facsimile: 833-423-5864 | */s/ Carlos V. Leach*<br>Carlos V. Leach, Esq.<br>FL Bar No. 0540021<br>cleach@theleachfirm.com |
| **FORESTER HAYNIE PLLC**<br>400 N. St Paul St, Suite 700<br>Dallas, TX 75201<br>Telephone: 214-210-2100<br>Facsimile: 469-399-1070 | */s/ Meredith Black-Mathews*<br>Meredith Black-Mathews, Esq.<br>TX Bar No. 24055180<br>mmathews@foresterhaynie.com |
| **RICHARD CELLER LEGAL, P.A.**<br>10368 W. SR 84, Suite 103<br>Davie, FL 33314<br>Telephone: 866-344-9243<br>Facsimile: 954-337-2771 | */s/Noah E. Storch*<br>Noah E. Storch, Esq.<br>FL Bar No. 0085476<br>noah@floridaovertimelawyer.com<br>Richard Celler, Esq.<br>FL Bar No. 0173370<br>richard@floridaovertimelawyer.com |