UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**CHRISTIAN GARCIA-ALVAREZ, on behalf of himself and those similarly situated,**

    Plaintiff,

v.

Case No. 4:21-CV-00124-ALM

**FOGO DE CHAO CHURRASCARIA (PITTSBURGH) LLC, a foreign limited liability Company, et al.**,

    Defendants.

-----------------------------------------------------------

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR RULING THAT PURPORTED ARBITRATION AGREEMENTS ARE INVALID AND UNENFORCEABLE AND SEEKING TO AUTHORIZE MAILING OF CORRECTIVE NOTICE AND POSTING ORDER

Defendants, Fogo De Chao Churrascaria (Pittsburgh) LLC, et al. (collectively, "Defendants" or "FOGO"), in Response to Plaintiff's Motion for Ruling That Purported Arbitration Agreements Are Invalid and Unenforceable and Seeking to Authorize Mailing of Corrective Notice and Posting Order, state as follows:

**I.    Introduction**

On September 8, 2020, Plaintiff, CHRISTIAN GARCIA-ALVAREZ ("Plaintiff"), filed a Collective Action Complaint in this matter in the United States District Court for the Western District of Pennsylvania. [D.E. 1]. On October 29, 2020, Plaintiff filed a "First Amended Complaint." [D.E. 13]. Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a), and because the case might have been brought in this district, Defendants filed an Unopposed Motion to Transfer Venue from Pennsylvania to the Eastern District Court of Texas, Sherman Division. [D.E. 24]. The action was then transferred to this Court. [D.E. 26].

After the transfer, Plaintiff filed an Unopposed Motion for Leave to Amend Complaint to allegedly "more efficiently adjudicate the claims brought in this action." [D.E. 51]. On July 6, 2021, this Court granted Plaintiff leave to file an amended complaint. [D.E. 53].[1]

Count I alleges a violation of the FLSA's minimum wage provisions; Plaintiff pursues his claim on his own behalf and as a putative "FLSA Collective."[2] Count II alleges a violation of the Pennsylvania Minimum Wage Act, and Count III alleges a violation of the Florida Constitution, Article X, Section 24. Plaintiff also offers numerous "Collective Factual Allegations" and "Class Representation Allegations", indicating he intends to pursue collective and/or class certification. (Pl's SAC, ¶¶ 80-111).

Plaintiff has filed "Opt-In" notices from seven individuals, meaning only eight individuals are known to have potential claims in this action. None of them are currently employed by FOGO. In addition, as of the date of this filing, Plaintiff has not moved to certify a collective or class action, which, under this Court's Scheduling Order dated July 7, 2021, must be filed by October 29, 2021. [D.E. 54]. Even though this Court has not authorized notice to putative plaintiffs and class members, Plaintiff nonetheless seeks an order permitting notice to FOGO employees regarding an arbitration agreement that is not relevant either to Plaintiff or the others who have opted into this action.[3] Plaintiff's motion is without merit and should be denied.

---

[1] Although Plaintiff identified that pleading as his "First Amended Complaint," he had already filed an amended complaint in the Pennsylvania court, so the operative pleading before this Court is actually a "Second" Amended Complaint ("SAC"). [D.E. 52].

[2] A "collective action" under 29 U.S.C. §216(b) requires a certification process, evidence that the proposed group members are "similarly situated" before notice will be provided to the potential class members, and then the potential members must actually "opt-in" to the lawsuit by signing a document expressing their desire to participate. A "class action" under Rule 23, however, automatically assumes that a potential class member is a part of the affected group unless he or she "opts out" of the lawsuit.

[3] As such, Defendants contend that this Motion is premature and should be denied on that basis.

## II. FOGO'S Distribution of the Arbitration Agreement and its Relevant Terms

In early 2020, FOGO began internal discussions about implementing an arbitration agreement for all of its employees, with a roll-out originally planned for March of 2020. HH, ¶ 6. Due to the COVID-19 pandemic, however, FOGO decided to postpone the distribution of the arbitration agreement. HH, ¶ 6. During the week of June 22, 2021, FOGO proceeded with its prior plan and provided an updated team member handbook, state-specific addenda, and a new "Mutual Arbitration Agreement" (the "Arbitration Agreement") to all of its employees through its cloud-based human resources data management system, Workday. HH, ¶ 7. FOGO uses Workday to communicate and distribute all human resources related information to its employees. HH, ¶ 7. A copy of the Arbitration Agreement is attached as "Exhibit A". HH, ¶ 7; Ex. 1.

Each FOGO employee was informed through Workday that signing the Arbitration Agreement was voluntary, and regardless of a confirming signature, an employee's continued employment or association with FOGO would constitute acceptance of the Arbitration Agreement and its terms. HH, ¶ 8. All employees were also informed of the basics of the arbitration process, and that they retained the same legal rights in arbitration as they would have in a court of law. HH, ¶ 8. They were further provided with an email address to contact if they had any questions or concerns. HH, ¶ 8. FOGO managers were instructed to inform employees that the documents had been provided to them via Workday for review, and that they could contact a designated e-mail address if they had any questions or comments. HH, ¶ 9. The managers did not, however, meet with employees to discuss the contents of the Arbitration Agreement, nor did they express any opinion regarding the Arbitration Agreement. HH, ¶ 9. For employees hired after July 1, 2021, each such employee was required to review and execute the Arbitration Agreement upon hire. HH, ¶ 10.

The Arbitration Agreement provides that certain claims, including claims like those asserted in the instant lawsuit, are to be adjudicated in binding arbitration. The Arbitration Agreement's relevant provisions state as follows:

- At the end of Section 1: **Claims subject to this Agreement also include claims already in existence, including without limitation those listed in Attachment A.** (emphasis in original).

- Section 8: "If Individual accepts or continues employment or other association with the Company, such employment or other association shall constitute acceptance of the terms of this Agreement and this Agreement shall apply to Individual and the Company, regardless of any request for a confirming signature or electronic acknowledgment and regardless of whether Individual or a Company representative signs or electronically acknowledges this Agreement.

- Section 9: "Individual has read and understands this Agreement and understands Individual may consult with an attorney of Individual's choosing regarding the Agreement's effect to the extent Individual deems necessary. If Individual desires a translation of this Agreement in a language other than English, Individual may request it from the Company. INDIVIDUAL IS KNOWINGLY AND VOLUNTARILY WAIVING THE RIGHT TO FILE OR PROCEED IN A LAWSUIT AGAINST THE COMPANY OR PROCEED IN FRONT OF A JUDGE OR JURY, INCLUDING IN THOSE CLAIMS LISTED IN ATTACHMENT A, EXCEPT AS DESCRIBED ABOVE. This Agreement does not constitute a guarantee of employment for any fixed period or under any particular terms except those contained herein and does not alter in any way the at-will nature of any employment relationship

- Attachment A at the end of the Arbitration Agreement specifically informs FOGO's employees that the Arbitration Agreements applies to "All claims that have been brought or could be brought in the following pending lawsuits", and then specifically lists the case of *Christian Garcia-Alvarez v. Fogo de Chão Churrascaria (Pittsburgh) LLC et al.*, Texas Eastern District Court Case No. 4:21-CV-00124 as one of those covered causes of action.

HH, ¶ 7, 11-12; Ex. 1.

When the Arbitration Agreement was distributed to FOGO's employees, the only Opt-In Plaintiff still employed with FOGO was Ereida Esocbar. On June 29, 2021, she voluntarily terminated her employment without reviewing the Arbitration Agreement, and thus she has never executed a copy of the Arbitration Agreement. HH, ¶ 13.

4

## III. <u>Enforceability of Arbitration Agreements</u>

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. An agreement to arbitrate is valid under the FAA when it meets central contract requirements under applicable state law. *Hadnot v. Bay, Ltd.,* 344 F.3d 474, 479 (5th Cir. 2003).

As this case is currently pending in the Eastern District Court of Texas, the applicable state law regarding the enforceability of an arbitration agreement is Texas contract law. *Kalenga v. Irving Holdings, Inc.*, 2020 WL 7496208 (N.D. Tex. Dec. 20, 2020); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018). An enforceable arbitration agreement requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba*, 892 F.3d at 689. As with any other contract, arbitration agreements are valid unless grounds exist at law or in equity for revocation of the agreement. *In re Poly-America, L.P., Ind. and d/b/a Pol-Tex International, and Poly-America GP, L.L.C., Relators,* 262 S.W. 3d 337, 348 (Texas 2003). The burden of proving such a ground exists to invalidate a contract falls on the party opposing the arbitration agreement. *Id*.

Determining if a valid arbitration agreement exists and is enforceable involves two analytical steps. *Kubala v. Supreme Prod. Servs., Inc.*, 2016 WL 7971733, # 5 (5th Cir. June 14, 2016). First, the court must determine whether the parties agreed to arbitrate the dispute. *Kalenga*, 2020 WL 7496208 at * 4. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable. *Id; Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The Fifth Circuit has repeatedly

emphasized the strong federal policy favoring arbitration. *Safer v. Nelson Financial Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

Plaintiff seeks a declaration that the Arbitration Agreement is void and unenforceable because it was presented to employees after the filing of this action. Notably, Plaintiff fails to cite to, nor is there any, United States Supreme Court, Fifth Circuit, or Texas Supreme Court precedent concluding an arbitration agreement is invalid simply because it was presented and agreed to after a class or collective action is filed. *Kalenga*, 2020 WL 7496208 at * 8. Plaintiff's position is demonstrably wrong, and has been rejected by multiple courts.

Courts routinely enforce post-litigation arbitration agreements when plaintiffs bound by such an agreement seek to opt into a collective action or participate as class members. *Kubala*, 2016 WL 7971733 at *1. The effect of an arbitration agreement is the same even when there is a pre-existing collective action: it prevents the signatory from litigating their FLSA claims in a judicial forum. *Stevenson v. Great Am. Dream, Inc., 2014 WL* 3519184, at *1 (N.D. Ga. July 15, 2014). FOGO did nothing more than what Texas and federal law permit it to do—namely, require its employees to arbitrate unpaid wage claims, rather than litigating them in a civil court. The arbitration agreement does not in any way reduce or remove the employees' rights to litigate such claims.

Plaintiff also tries to create the false notion that district courts in the Fifth Circuit routinely invalidate post-suit arbitration agreements. The relevant cases, however, demonstrate district courts in this circuit do not simply invalidate the underlying agreements; rather, they exercise their managerial authority to regulate the communications between parties, and often approve the underlying agreements. For instance, in *Norton v. Tucker Entertainment, LLC*, 2014 WL 5023654

(N.D. Tex. Oct. 8, 2014), a plaintiff filed a FLSA complaint, and thereafter entered into an agreement with the employer including an arbitration clause. *Id*. at *4. The *Norton* court determined the arbitration clause applied to the plaintiff's FLSA case and, accordingly, compelled arbitration. *Id*. at *5. In doing so, the *Norton* court concluded "it would be ill-advised to distinguish between pending and non-pending claims when applying the arbitration clause." *Id.* at *4. The *Norton* court further noted that the FAA does not distinguish between pending and non-pending controversies, and courts "rigorously enforce agreements to arbitrate." *Id*.

Similarly, in *Kalenga*, *supra,* the plaintiffs alleged an underlying arbitration agreement should not be enforced because the employer delivered the arbitration agreements to employees after an FLSA collective action lawsuit was filed. *Kalenga*, at *8. Those plaintiffs, as here, argued that the timing of the arbitration agreements "inappropriately usurped the collective action," and thereby made the agreements misleading, coercive, improper, and unenforceable. *Id.* Heavily relying on *Norton's* reasoning regarding the enforceability of arbitration agreements, the Northern District of Texas restated the principle that it, like the FAA, would not "distinguish between pending and non-pending claims." *Id.* at 9. It further opined the underlying arbitration agreements were "valid notwithstanding being executed after Plaintiff Kalenga and Plaintiff Bankete" initiated this lawsuit…," because the employer had met its burden of showing valid formation of the underlying agreements. *Id.* at 9-10.

Furthermore, in *Kubala, supra*, the plaintiff filed a collective action complaint against his employer. Those who joined that action alleged the employer "improperly and illegally implemented" an arbitration agreement giving employees a Hobson's choice — agree to arbitrate their claims or resign. *Kubala*, 2016 WL 7971733, * 4. They also alleged the employer met with potential plaintiffs and discouraged them from joining the pending action. *Id.* When addressing

7

these claims, the *Kubala* court determined the arbitration agreements were enforceable, largely because, "in an at-will employment setting, either party may choose to modify the terms and conditions of continued employment." *Id.* The *Kubala* court also emphasized, unlike cases such as *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014), where the employer had held meetings targeting only putative class members after a motion deadline had been established, the facts in Kubalar revealed no such focused or "targeted" behavior. *Kubala*, 2016 WL 7971733, * 4. Finding no dispute about the notice of the change, the court enforced the arbitration agreements. *Id*. at * 5.

In fact, in the limited number of federal cases that affirm the denial of an underlying motion to compel arbitration, the evidence revealed "overtly misleading and coercive acts by the employer." *See Degidio v. Crazy Horse Saloon & Rest., Inc.*, 880 F.3d 135, 138 (4th Cir. 2018) (denying motion to compel arbitration because of misleading tactics, coercion, and timing); *Billingsley v. City Trends*, 560 F. App'x 914, 922 (11th Cir. 2014) (finding post-suit arbitration agreements unenforceable because communications about the agreements were "confusing, misleading, and coercive" and involved meetings to enforce the arbitration agreement after litigation was underway).

## IV.     Plaintiff's Arguments Are Unfounded and Misplaced

Plaintiff baldly contends Defendants engaged in a "bold attempt to undermine the authority of the Court." (Pl's Mem., p. 1 [D.E. 56-1]). This allegation is wholly unfounded.

Plaintiff misrepresents the status of this case by stating Defendants sent the disputed arbitration agreement to employees "while this putative class action case was pending." (Pl's Mem., p. 2). As of the date this Response was filed, Plaintiff has not filed a motion seeking class

8

or collective action certification. Instead, the case currently includes the Plaintiff and only seven Opt-In Plaintiffs.

Moreover, Plaintiff concedes *all employees*, not just those who are potential plaintiffs and class members, received the "Mutual Arbitration Agreement". (Pl's Motion, p. 2). This is an important admission by Plaintiff because it is clear FOGO did not disseminate the Arbitration Agreement in response to this lawsuit. Instead, FOGO implemented a business decision that it had been planning for over a year, and that is consistent with the at-will nature of the employment relationship between FOGO and its employees.

Plaintiff also makes the unfounded and generalized allegation that FOGO has made an "improper, abusive, and misleading communication to potential class members." (Pl's Motion, p. 2). Yet, in the Motion, Plaintiff concedes a defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs." (Pl's Motion, p. 3). In fact, Plaintiff further admits the United States Supreme Court has concluded that reviewing courts may only exercise power when there is a "specific record showing by the moving party of the particular abuses by which it is threatened." *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981). (Pl's Motion, p. 4). Plaintiff's Motion fails to provide any record, let alone a "specific record," of particular abuses threatening the interests or rights of FOGO's employees.

Instead, Plaintiff asks this Court to simply take his word, unsupported by any evidence, and jump to the conclusion that the mere issuance of the Arbitration Agreement was somehow abusive and misleading. However, no evidence even suggests, much less established, that FOGO misled or abused its employees. In contract, the evidence reveals the Arbitration Agreement sets forth in bold that it specifically applies to this action. Likewise, employees were encouraged to seek legal counsel before executing the document. All of this language illustrates FOGO acted in

9

a spirit of fair-handedness and full disclosure, rather than coercing or intimidating employees, or disguising inappropriate motives.

Furthermore, Plaintiff primarily relies on cases where the defendant-employer attempted to "encourage class members not to join the suit" and "urg[ed] them to disassociate themselves from the suit." *See Belt v. Emcare, Inc.*, 299 F. Supp.2d 664, 667 (E.D. Tex. 2003); *Hampton Hardware, Inc. v. Cotter & Co., Inc.,* 156 F.R.D. 63, 633 (N.D. Tex. 1994). Plaintiff has not presented evidence that FOGO discouraged employees from joining or urged them to disassociate themselves from this lawsuit. Additionally, unlike the underlying facts in *Degidio,* FOGO did not falsely tell its employees they would lose employee benefits, schedule flexibility or tips, and as such, there is absolutely no evidence or indicia of coercion. *See Degidio,* 880 F.3d at 142-43. Instead, FOGO disseminated its Arbitration Agreement to all of its employees, and the language of the Arbitration Agreements covers nearly all employment-related claims, not just those at issue in this matter. For these reasons, Plaintiff's Motion should be denied.

## V. No Corrective Notice or Order Is Required or Appropriate

No corrective action, whether by notice, posting an order, or extending deadlines is warranted here. In fact, because the action has not been conditionally certified as a collective action, or certified as a class action, such corrective action would be confusing, at best.

Likewise, Plaintiff's true intentions here are plain. They seek to altogether circumvent the certification process by requesting relief that is disconnected from the supposedly inappropriate conduct — *i.e.*, an order requiring FOGO to provide Plaintiff's counsel with a list of the names and contact information for putative plaintiffs and class members. In other words, Plaintiff's counsel are seeking information they would only be entitled to receive if they met their burden of

demonstrating this matter should be certified as a collective and/or class action. This type of "end around" approach is totally inappropriate, and should not be allowed.

## VI. Conclusion

WHEREFORE, for all of the foregoing reasons, Defendants respectfully ask the Court to deny Plaintiff's Motion for Ruling That Purported Arbitration Agreements Are Invalid and Unenforceable and Seeking to Authorize Mailing of Corrective Notice and Posting Order, and grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Patrick F. Hulla*
Patrick F. Hulla, Esq. (*Pro Hac Vice*)
Missouri Bar No. 41745
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: (816) 410-2226
Facsimile: (816) 471-1303
Email: patrick.hulla@olgetree.com

*/s/ Victoria L. Vish*
Victoria L. Vish, Esq.
Texas Bar No. 24089850
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: (214) 987-3800
Facsimile: (214) 987-3927
Email: Victoria.vish@ogletree.com

*/s/ Mary Ruth Houston*
Mary Ruth Houston, Esq. (*Pro Hac Vice*)
Florida Bar No. 834440
Primary E-Mail: mhouston@shutts.com
Paul J. Scheck, Esq. (*Pro Hac Vice*)
Florida Bar No. 028487
Primary E-Mail: pscheck@shutts.com

11

SHUTTS & BOWEN LLP
300 S. Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 423-3200
Facsimile: (407) 425-8316
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of September, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Meredith Black-Mathews, Esq.
mmathews@foresterhaynie.com
Forester Haynie PLLC
400 N. St. Paul St., Suite 700
Dallas, Texas 75201

Noah E. Storch, Esq.
richard@floridaovertimelawyer.com
Richard Celler Legal P.A.
10368 W. SR 84, Suite 103
Davie, Florida 33314
*Attorneys for Plaintiff*

Carlos V. Leach, Esq.
cleach@theleachfirm.com
The Leach Firm, P.A.
631 S. Orlando Avenue, Ste. 300
Winter Park, FL 32789

*/s/ Mary Ruth Houston*
MARY RUTH HOUSTON, ESQ.

ORLDOCS 18990451 7