# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CHRISTIAN GARCIA-ALVAREZ, on behalf of himself and those similarly situated, § § § § *Plaintiff,* § § v. § § FOGO DE CHAO CHURRASCARIA (PITTSBURGH) LLC, a foreign limited liability company, *et al.*, § § § § *Defendants.* § | Civil Action No. 4:21-CV-00124 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Ruling that Purported Arbitration Agreements are Invalid and Unenforceable and to Authorize Mailing of Corrective Notice and Posting of Order (Dkt. #56). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

### BACKGROUND

On September 8, 2020, Plaintiff Christian Garcia-Alvarez, on behalf of himself and those similarly situated, filed this action against approximately forty "Fogo De Chao" steakhouse restaurants throughout the United States (collectively "Defendants") (Dkt. #1). Plaintiff asserts a claim for failing to pay minimum wages to carvers (or "churrasqueiros") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104, and the Florida Constitution, Article X, Sec. 24. (Dkt. #52 at pp. 5–6). Plaintiff pursues his FLSA claim on his own behalf and as a putative "FLSA Collective," which he contends includes all carvers who work or have worked for Defendants at any time within three

years prior to this action's filing date (Dkt. #52 at p. 6). Additionally, as to the claims brought under Pennsylvania and Florida laws, Plaintiff claims he intends to pursue class certification under Federal Rule of Civil Procedure Rule 23(b) (Dkt. #52 at p. 7). However, Plaintiff has not yet moved to certify a collective or class action, which must be filed by December 8, 2021 (Dkt. #67). As of the date Plaintiff filed the present motion, seven other individuals have filed "Opt-In" notices.

While this case was pending, during the week of June 22, 2021, Defendants sent a "Mutual Arbitration Agreement" (the "Agreement") to all employees through their cloud-based human resources management system, Workday (Dkt. #57, Exhibit 1 at p. 2). The Agreement provides that virtually all employee claims, specifically including the claims involved in this case and in four other pending lawsuits, are to be adjudicated in binding arbitration (Dkt. #57, Exhibit A). The Agreement further states that it binds every employee, regardless of whether the Agreement is signed, since an employee's continued employment with Defendants constitutes acceptance of the Agreement and its terms (Dkt. #57, Exhibit A).

At the time the Agreement was distributed to employees, only one opt-in plaintiff, Ereida Escobar, was still employed with Defendants (Dkt. #57-1 at p. 3). In other words, at the time of the distribution, named Plaintiff and the other six opt-in plaintiffs were no longer working at Fogo De Chao and were thus not subject to the Agreement. Further, Hilma Hernandez, the Vice-President, Field, and Corporate Human Resources Director for Fogo De Chao, declared that Escobar voluntarily terminated her employment on June 29, 2021 without reviewing the Agreement, and thus Escobar has never seen nor executed the Agreement (Dkt. #57-1 at p. 3).

On September 9, 2021, Plaintiff filed the present motion (Dkt. #56). On September 23, 2021, Defendants filed a response (Dkt. #57). On October 11, 2021, Plaintiff filed a reply (Dkt. #63).

## LEGAL STANDARD

As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions.[1] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Indeed, because of the potential for abuses in collective actions, most often in the form of improper communications that undermine the collective action process, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

Accordingly, courts have the power to regulate communications between a party and absent class members that are "misleading, coercive, or an attempt to undermine the collective action." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003). Although courts have broad authority to manage collective actions, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members. *Id.* Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties. *Id*.

---

[1] In contrast to a class action under Federal Rule of Civil Procedure 23, which generally requires potential plaintiffs to opt-out if they do not wish to be represented in the lawsuit, a collective action under § 216(b) requires potential plaintiffs to affirmatively opt into the lawsuit. *Swales v. KLLM Transp. Servs. L.L.C.*, 985 F.3d 430, 435 (5th Cir. 2021).

In the Fifth Circuit, courts apply a two-part test to determine whether to issue an order impacting a party's speech with putative class members. *Kalenga v. Irving Holdings, Inc.*, No. 3:19-cv-1969, 2020 WL 7496208, at *11 (N.D. Tex. Dec. 12, 2020); *see also Vogt v. Tex. Instruments Inc.*, No. 3:05-cv-2244, 2006 WL 4660133, at *3 (N.D. Tex. 2006) (outlining a "two-part test" from *Belt*, 299 F. Supp. 2d at 668). First, the court determines "whether there is a need for a limitation on speech, and does so by determining whether the party's speech is misleading, coercive, or an attempt to undermine the collection action." *Kalenga*, 2020 WL 7496208, at *11 (internal quotations omitted). Second, if a court finds a basis for restricting speech, "the court should then tailor appropriate injunctions and sanctions in light of First Amendment concerns." *Id.* (internal quotations omitted).

## ANALYSIS

In the present motion, Plaintiff requests the Court to: 1) declare the Agreement that Defendants issued, as it affects the proposed class in this case, void, invalid, and unenforceable; 2) authorize mailing of a proposed corrective notice at Defendants' expense; 3) order Defendants to provide Plaintiff's counsel with a list of the names of putative class members and their last-known residence addresses and e-mail addresses to facilitate mailing of the corrective notice; and 4) direct Defendants to post a copy of this Order at each of Defendants' work locations where putative class members may be present (Dkt. #56 at p. 11). Plaintiff argues that the Court has the power to take these remedial actions under its authority to limit the nature of communications between a party and a putative class member (Dkt. #63 at p. 3). Defendants disagree. They contend that courts routinely enforce post-litigation arbitration agreements and that Plaintiff's motion fails to provide "a 'specific record' of particular abuses threatening the interests or rights of FOGO's employees" (Dkt. #57 at pp. 6, 9). The Court will address each of Plaintiff's requested remedial

measures in turn, starting with Plaintiff's request that the Court declare void the Agreement as it affects the proposed class in this case.

I.     **The Arbitration Agreement**

Plaintiff requests that this Court invalidate the Agreement as to potential class members. Plaintiff argues that Defendants' implementation of the arbitration program was an improper, coercive, and misleading communication for several reasons (Dkt. #56). First, Plaintiff points to the timing of the Agreement—the fact that it was sent out to employees after this collective action was filed (Dkt. #63 at p. 2). Second, Plaintiff points to several aspects about the Agreement itself as being coercive and misleading. For example, Plaintiff contends that the Agreement fails to inform potential collective members of the impact that signing the Agreement would have on their collective rights in this lawsuit and fails to provide a clear and unambiguous opportunity to reject the Agreement (Dkt. #56 at p. 2). In support of his motion, the only evidence Plaintiff submits is the Arbitration Agreement itself.

Neither party disputes that the Court has broad authority to limit communications between parties and potential collective action members. Nor could they. *See Sperling*, 493 U.S. at 171. But even Plaintiff recognizes there are limits on the Court's broad power in this context—in light of First Amendment and free speech concerns (Dkt. #56 at p. 4). Indeed, as the Supreme Court has recognized, courts "may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened." *Bernard*, 452 U.S. at 102. Simply put, the moving party must produce "some evidence that justifies interference with Defendant's speech." *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997). Here, Plaintiff has not met the standard required to restrict class communications.

### A. Plaintiff Has Not Shown the Agreement Was Coercive.

First, as mentioned, beyond the Agreement itself, Plaintiff offers no support for his arguments. For example, though Plaintiff generally argues that the Agreement is coercive, he points to no other specific evidence of coercion or efforts to undermine the potential collective action by Defendants. That more evidence is needed for Plaintiff to prevail is highlighted by the cases that Plaintiff relies on that have refused to enforce arbitration agreements. These cases are distinguishable because they involved evidence of potential coercion or actual coercion to a far more substantial degree than present here. *See Billingsley v. Citi Trends, Inc*. 560 F. App'x 914 (11th Cir. 2014); *Degido v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135 (4th Cir. 2018).

For example, in the two Circuit Court of Appeals cases that have considered whether remedial measures were warranted for post-suit arbitration agreements, the plaintiffs presented more evidence suggesting coercion than just the agreements themselves. *See id*. In *Billingsley*, about three months after the collective action was filed, the defendant-employer implemented a new dispute resolution policy that included a mandatory arbitration agreement. 560 F. App'x at 922. Notably, the defendant-employer rolled out the new policy in a "blitzkrieg fashion," to only putative class members, and required the employees to attend an in-person meeting to sign the agreement under a false guise. *Id.* at 918–19. Further, based on affidavits from several opt-in plaintiffs, the district court found that the store managers understood that they would be fired if they did not assent to the new arbitration agreement. *Id.* Based on this evidence, the Eleventh Circuit affirmed the district court's order to void the arbitration agreements. *Id.* at 924. Similarly, in *Degido*, the Fourth Circuit affirmed a district court's denial of an FLSA defendant's motion to compel arbitration. 880 F.3d. at 144. There, the Fourth Circuit focused on the fact that "the setting was ripe for duress"—potential plaintiffs met with defendant's Chief Financial Officer and counsel

before signing the arbitration agreement, the agreements were presented in a furtive manner, and the agreements painted a false picture of the lawsuit. *Id.* at 143–44.

Unlike *Billingsley* and *Degido*, here, Plaintiff does not point to any evidence of coercion by Defendants beyond the mere issuance of the Agreement itself. While the Court agrees that the ongoing business relationship between Defendants and potential class members invites the potential for coercion, *see Hampton Hardware, Inc. v. Cotter & Co., Inc*. 156 F.R.D. 630, 633 (N.D. Tex. 1994), this alone is insufficient to warrant relief. Again, there is no other evidence that Defendants targeted the putative class members, let alone pressured them or took advantage of the disparity in bargaining power. Even Plaintiff admits that *all* employees, not just the carvers—or potential class members—received the Agreement (Dkt. #56 at p. 2). This broad dissemination of the Agreement suggests that Defendants did not disseminate it in response to the lawsuit or target potential plaintiffs. Further, Defendants point to a declaration from the Vice-President of Human Resources stating that implementation of the Agreement was originally planned to occur in March of 2020—several months before this lawsuit was filed (Dkt. #57-1 at p. 2). This also suggests that the Agreement was implemented as part of a business decision, not as an improper attempt to prevent class members from joining this litigation.

### B. Plaintiff Has Not Yet Shown the Agreement Was Misleading.

Similarly, the Court finds that Plaintiff has not met his burden to show the Agreement was misleading. As a starting point, the Agreement sets forth in bold that it applies to claims already in existence—including the claim in this action (Dkt. #57, Exhibit A). Likewise, the Agreement clearly states that an employee is knowingly and voluntarily waiving the right to file or proceed in a lawsuit (Dkt. #57, Exhibit A). But there are some aspects about the Agreement that cause the Court concern.

First, the Agreement itself does not contain a description or nature of the pending lawsuits that employees are waiving their rights to. Without this, the Agreement may fail to meaningfully inform users about their potential rights. *See Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1063 (W.D. Wash. 2019). More troubling, though, are the circumstances surrounding the imposition of the Agreement. While an arbitration agreement is not automatically invalid because it was agreed to after a class or collective action was filed, *see Kalenga*, 2020 WL 7496208, at *8, other circumstances surrounding the impetus of an agreement may make it improper.

Indeed, the Agreement is titled "Mutual Arbitration Agreement"—yet, the Defendants unilaterally implemented the Agreement without requiring any "mutual" acknowledgement of it. *Tomkins v. Amedisys, Inc.*, No. 3:12-cv-01082, 2014 WL 129401 at *1 (D. Conn. Jan. 13, 2014) (finding employer-imposed arbitration agreement "without any signature or affirmative indication of consent from the employee [was] particularly troublesome"). In particular, the Agreement states in a small paragraph on the third page that an employee's continued employment constitutes acceptance of the Agreement—regardless of whether the employee signs the Agreement. But then the Agreement also a large space at the bottom for a signature. Thus, the Agreement could reasonably be misleading to lay persons because it does not require an employee to sign the document before it becomes effective, even though it contains a signature line. *See Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d. 952, 956 (N.D. Ill. 2013). Indeed, as another district court has recognized in finding an arbitration agreement confusing:

> Lay persons commonly understand a document labeled an "agreement" which is presented to them unsigned and not previously negotiated as not binding on them until they agree to it by affixing their signatures. Because of the label, they may not read the document carefully or at all since they reasonably believe it will not affect them without their affirmative approval.

*Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 WL 2713741, at *2 (E.D. Pa. July 13, 2011).

However, while noting these concerns, the Court also recognizes that Plaintiff has not yet met his burden to show Defendants engaged in misleading communications with the putative class. *See Bernard*, 452 U.S. at 102 (noting the moving party must demonstrate the particular abuses by which it is threatened). For example, while not dispositive on the matter, Plaintiff's motion does not include any evidence to show that any potential class member was, or even felt, misled by the Agreement. *See id.* at 103 n.18 (noting it would be improper for the Court to give weight to any unsworn allegations of misconduct on the part of an attorney). Further, Plaintiff's motion does not detail the circumstances surrounding distribution of the Agreement. Indeed, all of the facts surrounding the circumstances regarding distribution of the Agreement come from Defendants' motion. But the facts are murky. For example, while Hernandez's declaration states that employees were informed through Workday that an employee's continued employment would constitute acceptance of the Agreement, was this notification separate from the Agreement itself? What were the details surrounding this notification? As employees hired after July 1, 2021 were "required to review and agree" to the Agreement before being hired, was this procedure different for current employees? How has Escobar "never seen nor executed" the Agreement if she was still working at the time the Agreement was allegedly sent out? Indeed, as these questions indicate, the details regarding the imposition of the Agreement are scant and the Court needs more information before it can decide whether the Agreement should be void as to the putative class.

Moreover, in light of a review of the procedural history of this case, the Court finds a present ruling on this issue would be premature. Though the core dispute between Plaintiff and Defendants in the motion is the enforceability of the Agreement, the current motion before the

Court is *not* a motion to compel arbitration. This is because the Defendants have not moved the Court to compel arbitration, and they cannot do so currently. Defendants claim neither the named Plaintiff nor the current opt-in plaintiffs are subject to the Agreement (Dkt. #57-1 at p. 3). Thus, the Agreement Plaintiff urges the Court to invalidate are between Defendants and third parties not presently before the Court. As such, a decision on the Agreement would have no effect on the named plaintiff and the other opt-in plaintiffs. Further, the Court has no evidence that any potential class members desire to have the Agreement voided. Accordingly, for these reasons, the Court denies Plaintiff's request for the Court to declare the Agreement unenforceable as to potential class members.

Further, since the Court has not found the Agreement to be misleading, coercive, or an attempt to undermine the collective action, and thus that no limitation on speech is necessary, the Court does not consider any other of Plaintiff's requests for remedial measures.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Ruling that Purported Arbitration Agreements Are Invalid and Unenforceable and to Authorize Mailing of Corrective Notice and Posting of Order (Dkt. #56) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

SIGNED this 7th day of December, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE