## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| CHRISTIAN GARCIA-ALVAREZ, on behalf of himself and those similarly situated**,** | |
| Plaintiffs, | CIVIL ACTION FILE NO: |
| v. | 4:21-cv-124-ALM |
| FOGO DE CHAO CHURRASCARIA (PITTSBURGH) LLC, *et al*., | |
| Defendants. | |

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION AND MEMORANDUM IN SUPPORT

Plaintiff Christian Garcia-Alvarez files this Motion for Certification of Collective Action, and as grounds thereof, states:

1. Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. *See* 29 U.S.C. § 216(b).

2. As stated in Plaintiff's Amended Complaint, Plaintiff worked as a

Churrasqueiro/Carver employed by Defendant and is authorized by the FLSA to sue in his own name on behalf of himself and other employees similarly situated.

3.      The similarly situated employees ("class members") consist of the following positions:

> **All carvers (churrasqueiros) who worked for Defendants nationwide and were paid pursuant to the "tip credit" (less than minimum wage plus tips) during the last three (3) years preceding this lawsuit.**

4.      While Plaintiff believes nationwide certification is appropriate here, if the Court finds otherwise, Plaintiff proposes that the Court certify a class of churrasqueiros who worked at any of the locations Plaintiff and the opt-in Plaintiffs worked or trained. That is, the stores located in the following markets: Atlanta, Georgia; Dunwoody, Georgia; Pittsburgh, Pennsylvania; Jacksonville, Florida; Irvine, California; Detroit, Michigan.

5.      Defendants pay or paid FLSA Collective members a reduced tipped minimum wage rate, plus tips. Defendants subject(ed) Plaintiff and the FLSA Collective members to the same illegal practice and policy by forcing them to participate in a tip pool contribution plan that includes non-traditionally tipped employees.

6.      Defendants also required Plaintiff and the FLSA Collective members to perform non-tipped work at the tipped minimum wage rate, thereby causing Plaintiff and the FLSA Collective members to be paid less than the required

minimum wage.

7.     As a result, Plaintiff and all FLSA Collective members are not or were not guaranteed at least the full minimum wage for all hours worked.

8.     Simply put, all class members are owed full and proper payment of minimum wages, improperly withheld tips, and the right to participate in this litigation. Defendant has acted or refused to act on common grounds applicable to the class members thereby making the identical relief appropriate with respect to their current and former class members as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only Plaintiff, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the named Defendant. And although the class of current and former class members is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendant's records.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant Plaintiff's request for Court authorization to provide that: (1) Defendant produce to Plaintiff a list of all similarly situated class members within the last three years; (2) the proposed "Notification" letter, attached as **Exhibit "A"**, to be sent to all similarly situated employees nationwide; and (3) the proposed "Notice of Consent to Join"

form, attached as **Exhibit "B"**, which similarly situated employees can complete, sign, and file with the Court.

## <u>MEMORANDUM OF LAW</u>

### I.      DEFENDANT'S RELEVANT OPERATIONS

Defendant, Fogo De Chao Churrascaria, LLC ("Fogo"), collectively owns and operates forty-six, (46) "Fogo De Chao" steakhouse restaurants throughout the United States. *See* Ex. C[1], Deposition of Richard Lenderman, Defendant's Rule 30(b)(6) Corporate Representative, at p. 23:25. Fogo has a centralized corporate structure that handles accounting, payroll, shared services, supply chain, and human resources for all 46 restaurants located in their corporate office in Plano, Texas. *Id*. at 13:3-10, 15:20-25, 18:14-17.

Each of the restaurants is structured as its own entity, *id*. at 34, but all Fogo restaurants follow the same centralized policies, provide the same employee handbook, training manuals and job descriptions to all restaurants and employees across all forty-six Fogo locations that originate from Defendant's corporate office. *Id*. at 24:12–24, 25:3–14. Defendant uses the same payroll company for all of its stores and each store is under the same insurance policy. *Id*. at 33–34. Each of Defendants' restaurants maintain general managers, assistant managers, sales

---

[1] The deposition of Richard Lenderman, acting as Defendant's corporate representative, was taken on November 9, 2021. All citations will reference the relevant page.

managers, customer service representatives, kitchen support teams, and front of the house employees such as bartenders, servers, churrasqueiros/carvers, and market table attendants. *Id*. at 27:7–24. Ultimately, each of the restaurants takes its policy directions from Defendant's corporate entity to ensure consistency across all stores and to operate in a uniform manner. *Id*. at 30, 34.

## II.    PLAINTIFF AND THE CLASS MEMBERS ARE SIMILARLY SITUATED

Plaintiff Christian Garcia-Alvarez was employed by Defendant as a churrasqueiro. Ex. D, Garcia Dep. at 10. In the Fogo restaurants, a churrasqueiro is also known as a "gaucho chef." Corp. Rep. Dep. at 40. A churrasqueiro is a position employed in each of Defendants' locations and is considered tip-eligible. Corp. Rep. Dep. at 54–55. Garcia worked for Defendant, at various times from 2015 until the end of his employment in 2020, at five (5) of Defendant's locations (Puerto Rico; Atlanta, Georgia; Dunwoody, Georgia; Pittsburgh, Pennsylvania; and Jacksonville, Florida). Garcia Dep. at 10. Garcia also trained employees when Defendant opened new stores around the country, including in Irvine, California and Detroit, Michigan. Garcia Dep. at 12. Opt-in Plaintiffs Axel Torres Nieves and Jose Mendez-Ortiz were also employed as churrasqueiros. Nieves work in the Atlanta location and Mendez-Ortiz worked in Defendant's Puerto Rico, Atlanta, and Jacksonville restaurants. Ex. E, Nieves Dep. at 10; Ex. F, Mendez-Ortiz Dep. at 28.

### A.   Churrasqueiros have the same job duties nationwide, including pre-shift non-tipped work.

Churrasqueiros have the same job duties at each of Defendant's restaurants. Corp. Rep. Dep. at 41. These employees butcher, skewer, season, cook, and serve meat table side to Defendant's customers. Corp. Rep. Dep. at 73; Ex. G, Ex. 23 to Garcia Dep. (Job Description). At times, cutting meat during a shift could take an hour at a time. Nieves Dep. at 33. At other times, churrasqueiros must attend to the charcoal used to cook meat and clean the kitchen during their shift. Nieves Dep. at 12.

Churrasqueiros' job duties also included significant pre-shift work (*i.e.*, before customers arrive), including butchering meat, cleaning, and placing charcoal. Garcia Dep. 83–84 Nieves Dep. at 11–12; Mendez-Ortiz Dep. at 37–38. This pre-shift work required churrasqueiros to come into work one to three hours before a shift started to prepare for the shift. Garcia Dep. 83–84 Nieves Dep. at 11–12; Mendez-Ortiz Dep. at 37–38. When performing pre-shift work, churrasqueiros would clock in using the churrasqueiro job code, as opposed to one of the non-tipped employee job codes. *Id.*   This means that when churrasqueiros perform pre-shift work, they do so at the tipped rate but without making any tips for that work.

### B.   Churrasqueiros are all paid in the same unlawful manner.

At each of Defendant's restaurants where permitted, churrasqueiros are paid

the tipped minimum wage and Defendant takes a tip credit. Corp. Rep. Dep. at 44.
In other words, the only locations in the United States where churrasqueiros are not
paid in this manner is in states that do not recognize a tip credit. *Id*. In those locations
that use the tip credit, churrasqueiros also participate in a tip pooling arrangement,
whereby a portion of the tips they receive go into a pool that is divided among all tip
pool participants. Corp. Rep. Dep. at 52; Garcia Dep. 10; Nieves Dep. at 32;
Mendez-Ortiz Dep. at 13. According to Defendant's policies, the employees who are
supposed to participate in the tip pool are servers, bartenders, bussers, customer
service representatives, and churrasqueiros. Corp. Rep. Dep. at 54–55. In practice,
non-tipped employees (such as kitchen staff) also take part in the tip pool. Garcia
Dep. at 8, 10; Nieves Dep. at 35–36.

     **C.**    **Customer Service Representatives nationwide have the same job
duties and illegally participate in the tip pool.**

Customer Service Representatives at each of Defendant's restaurants have the
same job duties. Corp. Rep. Dep. at 77 and Ex. 5 to Corp. Rep. Dep. Customer
Service Representatives walk through the restaurant speaking to customers at their
tables to ensure that the customers are having a positive experience. Corp. Rep. Dep.
at 79–80. If there is something a customer needs and cannot find his or her server,
the customer can ask a Customer Service Representative. *Id*. at 80. Customer Service
Representatives may also assist in serving a dessert or pouring wine for a customer.

*Id*. at 79. Customer Service Representatives are not paid pursuant to the tip credit and are typically paid between $12 to $15 per hour, depending on the market, and take part in the tip pool. *Id*. at 94.

Customer Service Representatives also take inventory of wine and verify that the dining room meets Defendant's dining standards. *Id*. at 83. They also respond to customer complaints and attempt to resolve them. *Id*. Because of this added responsibility, Customer Service Representatives are typically individuals who have been promoted from a churrasqueiro or server role. *Id*. at 83–84.  Customer Service Representatives also attend manager meetings, as well as business and networking meetings as requested. Corp. Rep. Dep. at 86.

Here, Defendant utilizes policies that deprive Plaintiff and the Collective Based of the minimum wage in two ways: (1) Defendant requires churrasqueiros to participate in invalid tip pools that include non-tipped employees such as Customer Service Representatives and employees who do not customarily and regularly receive tips; and (2) Defendant requires churrasqueiros to perform non-tipped work, more than 20 percent of the time, prior and during their shifts, but illegally pays them at the tipped minimum wage rate. Fair Labor Standards Act § 3, 29 U.S.C.A. § 203(t); 29 C.F.R. § 531.56(e); Marsh v. J. Alexander's LLC, 905 F.3d 610, 620 n.7 (9th Cir. 2018).

Based upon Defendant's use of unlawful pay policies, Plaintiff seeks this Court's authorization to facilitate notice to each employee who worked for Defendant as a churrasqueiro within the last three years. Plaintiff further requests that he be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this litigation by executing an appropriate consent as required by Section 216(b) of the FLSA.

## III.   APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

### A.   General Principles

FLSA Rule 216(b) collective actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is just the exact opposite of traditional Rule 23 class actions in which a Plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sperling*, 492 U.S. 165 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery

process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *Id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *Id.* at 487. Additionally, the benefits of the class action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

### B.     The Fifth Circuit's *Swales* Decision.

The Fifth Circuit recently announced a new standard to collective actions to

determine whether notice to putative class members is appropriate. *See Swales v. KLLM Transport Service, LLC*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, the Fifth Circuit stated that the district court's job in putative collective action cases simply is to determine if class members are "similarly situated." Fifth Circuit said that "a district court ... identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated." *Id.* (quotations omitted). Then, a district court "should authorize preliminary discovery accordingly." *Id.* "The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible." *Id.*

After ordering the amount of discovery that it deems necessary, the district court must then determine whether the "merits questions" it identified at the outset can be answered on a collective basis. *See id.* at 442–43. That is, the district court must decide whether the employees are "similarly situated," therefore making collective adjudication of their claims against the defendant appropriate. *See id.* "If answering [these merits] question[s] requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions," rendering certification of the proposed collective inappropriate. *Id.* at 442.

**C.**    **Plaintiff can meet the *Swales* standard because churrasqueiros are similarly situated nationwide based on their job duties and Defendant's invalid tip pooling arrangement.**

Plaintiff here can meet the *Swales* standard. Plaintiff has demonstrated that he, the Opt-in Plaintiffs, and the putative class are "similarly situated" because: (a) they were all employed as churrasqueiros; (b) they all performed the same or substantially similar job duties; (c) they were all paid in a similar manner (pursuant to the tip credit); (d) they were all subjected to the same uniform timekeeping and pay policies at issue; and (e) they are all owed compensation as a result of the Defendant's use of an invalid tip pool.

The claims here can be, and should be, resolved on a collective basis, and therefore, Plaintiff has more than satisfied his burden to facilitate notice. Here, Defendant employed *thousands* of similarly situated class members during different times over the last three years. These class members were all paid in the same manner: at the tipped hourly wage, receiving tips, and participating in a tip pool. The tip pool at each of Defendant's locations included Customer Service Representatives – a position that does not customarily and regularly receive tips – as well as non-tipped kitchen staff. These invalid tip pools resulted in Plaintiff and the other class members (1) receiving less than minimum wage and (2) being required to give up tips that should belong to Plaintiff and the other class members.

### D.   Churrasqueiros are similarly situated in that they perform pre-shift, non-tipped work at the tipped rate.

Furthermore, Plaintiff and the Opt-In Plaintiffs testified to the fact that they all conducted extensive pre-shift work and were paid only the tipped hourly rate. This includes butchering meat, cleaning, and placing charcoal. Garcia Dep. 83–84 Nieves Dep. at 11–12; Mendez-Ortiz Dep. at 37–38. In fact, non-tipped work is listed in the churrasqueiros' job description created by Defendant, and includes butchering, trimming, seasoning, skewering, and cooking meat; checking temperatures of meat and marinades; maintained clean and sanitary work stations, wiping down counters, and utensils, and other kitchen equipment. Ex. G (Job Description).

When performing this work, churrasqueiros would clock in using the churrasqueiro job code, as opposed to another job code that received at least the full minimum wage. *Id.* However, this work was performed prior to any customers being present in the restaurants and without receiving tips. Garcia Dep. 83–84 Nieves Dep. at 11–12; Mendez-Ortiz Dep. at 37–38. As a result, Defendant has failed to pay Plaintiff, the opt-in Plaintiffs, and the members of the class the appropriate minimum wage for all hours worked and Plaintiff's motion should be granted.

E.    **Numerous Courts Have Granted Collective Actions in Similar Cases**

Applicable FLSA jurisprudence demonstrates precedence for conditional certification of collective actions based on an employer's use of an invalid tip pool. *See Lopez-Gonzales v. Ramos*, 2021 WL 3192171 (N.D. Tex.) (granting plaintiff's motion for certification of collective action involving tip pooling allegations under *Swales* standard); *Anderson v. Southern Premium Hospitality Group, LLC*, 2014 WL 3615353 (S.D. Tex.) (granting conditional certification in tip pooling case); *Torres v. Cache Cache, LTD*, 2012 WL 6652856 (D. Colo) (granting certification in case alleging violations of FLSA due to invalid tip pool); *Miller v. Garibaldi's, Inc.*, Case No. CV414-007 (S.D. Ga Mar. 13, 2015) (granting plaintiff's motion for conditional certification in case involving tip pooling allegations); *Williams v. Omainsky*, 2016 U.S. Dist. LEXIS 7419 (S.D. Ala. Jan. 21, 2016) (granting plaintiff's motion for conditional certification involving tip pooling allegations).

Plaintiff has submitted substantial evidence in support of his Motion. Based upon a review of the deposition of Plaintiff and the other opt-in Plaintiffs and the testimony from Defendant's own representative, specific facts based on personal observation have been provided to support their belief that there was a companywide policy that affected all of the putative class members and that other employees are interested in opting in. In addition, allowing class notification to a potential class as

large as **several thousand** plus class members will definitely avoid multiple lawsuits where numerous employees have allegedly been harmed by the same violation**.** *See, Hoffman-LaRoche*, 493 U.S. at 470 ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

### F.    Number of Opt-In Plaintiffs Required

In determining whether to grant a Motion for Class Notice, typically Courts do not require a high number of Opt-in Plaintiffs to have already joined the case. *See Crain,* 1992 WL 91946 at FN5, *supra* (noting that only **five (5)** opt-in Plaintiffs had joined the FLSA class at the time of the motion); *See also Ackley v. City of Fort Lauderdale*, Case No.:07-cv-60960, at Doc. 45(S.D.Fla. Jan., 24, 2008)(Granting Motion for Class Notice with Plaintiff and **two (2)** Opt-in Plaintiffs); *See e.g., Dietrich v. Liberty Square,* 230 F.R.D. 574, 579 (N.D. Iowa 2005)(**two (2)** affidavits provide sufficient factual basis for similarly situated inquiry); *See also Beck v. Desoto Health and Rehab,* case No.: 2:06-CV-226-FTM-34DNF, at Docs. 23, 34 (M.D. Fla. Jan. 24, 2007)(Granting Class Notice Motion with only **one (1)** opt-in); *See also Titre v. Platinum Partners,LLC et al.,* Case Number: 0:08-cv-61254 at Doc. 42 (S.D. Fla. Oct. 16, 2008) (Granting Class Notice with **eleven (11)** Opt-ins); *Larry Guerra v. Big Johnson Concrete Pumping, Inc.,* CASE NO.: 05-14237 (S.D. Fla. May 17, 2006)(Granting Class Notice Motion where there was only **one (1)** Opt-in

Plaintiff); *Davis v. Precise Communications, Inc.*, 2009 WL 812276 (N.D.Ga. March 27, 2009)(Granting Class Notice Motion with only **three (3)** opt-in Plaintiffs).

Those who have opted into the case to date are: (1) Axel Torres Nieves, (2) Jose Mendez-Ortiz, and (3) Hugo Guzman. Based upon the discovery taken so far, Plaintiff has more than satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist. Here, a collective action (as they are termed under the FLSA) is sought as the Defendant has acted or refused to act on grounds generally applicable to the class members, thereby making appropriate the same relief with respect to the class as a whole.   Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

### IV.    PROPOSED REGION FOR NOTICE

Plaintiff proposes that the Court-supervised notification include any churrasqueiros who worked at any of Defendant's locations nationwide, who were paid utilizing the tip credit and/or participated in a tip pool. Based upon this record, Plaintiff has demonstrated that the class members at issue in the instant case are "similarly situated" because they: (1) were paid in the same manner; (2) had the same or substantially similar job duties; (3) were paid in the same manner; (4) were required to participate in a tip pool that included non-tipped employees; and (5)

performed non-tipped work for which they were paid only at the tipped minimum wage rate.

While Plaintiff believes nationwide certification is appropriate here, if the Court finds otherwise, Plaintiff proposes that the Court certify a class of churrasqueiros who worked at any of the locations Plaintiff and the opt-in Plaintiffs worked or trained. That is, the stores located in the following markets: Atlanta, Georgia; Dunwoody, Georgia; Pittsburgh, Pennsylvania; Jacksonville, Florida; Irvine, California; Detroit, Michigan. Based on the record evidence, Plaintiff and the opt-in Plaintiffs have direct knowledge of the operations in each of these locations based on their personal experience. Moreover, at least one other district court has taken a similar approach. *See Lopez-Gonzales v. Ramos*, 2021 WL 3192171, at *4–5 (N.D. Tex.) (granting plaintiff's motion for certification of collective action involving tip pooling allegations under *Swales* standard for location where Plaintiff worked).

## V.   THE "MERITS" OF PLAINTIFF'S CLAIM ARE NOT CONSIDERED WHEN DETERMINING WHETHER TO GRANT NOTICE

Plaintiff anticipates Defendant will contend that notice should not proceed based upon the only possible defense it may have to this action: that Defendant's tip pools are valid, that Plaintiff and the class were properly compensated using the tip credit method of calculation, and that Plaintiff did not perform pre-shift work for

which he was not properly compensated. Under *Swales*, the court need only determine if the merits of this case can, and should, be resolved collectively. 985 F.3d at 442–43.

Although Plaintiff believes these defenses will ultimately fail based upon the additional facts that will emerge during discovery, such an argument regarding the factual nature of Plaintiff's claims and Defendant's defenses thereto are irrelevant at this stage of the notification process. Thus, setting Defendant's anticipated factual/legal arguments aside for purposes of the instant Motion, Plaintiff clearly has met his burden of proof on the "similarly situated" prong.

## VI.   PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE POSTED AT ALL OF DEFENDANT'S LOCATIONS NATIONWIDE

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann- La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted and notice sent nationwide. That the plaintiffs and the potential claimants may have worked in different areas of the country and at different restaurants, is not dispositive. *See Crain et al. v. Helmerich and Payne Int'l Drilling Co,* 1992 WL 91946, at *3 (E.D. La). That is because Plaintiff and the class members held the same job and performed the same job duties at each of Defendant's stores and operated under the same policies.

Plaintiff also requests that in addition to permitting Plaintiff to notify the potential class members by mail, this notice be posted at each of Defendant's locations at which the class members are employed to further the broad remedial purpose of the FLSA. *See Johnson v. Am. Airlines, Inc.,* 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards reasonable); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 493 (E. D. Cal. 2006) (finding that first class mail, combined with posting provided for the "best notice practicable" to the potential class); *Veliz v. Cintas Corp.,* 2004 WL 2623909, at *2 (N.D. Cal. 2004) (requiring employer to post notice and consent forms in all of its work sites).

## VII.   DISCOVERY OF NAMES AND ADDRESSES OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *See Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, *3 (W. D. Wash. 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt into the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See Hoffmann-La Roche*, 493 U.S. at 165; *see also, Dietrich v.*

*Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. 2006)[2] Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Defendant to provide Plaintiff with a list of all putative class members' names and addresses to carry out notice.

## VIII.  NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS

Notice within a three-year statute of limitations period is appropriate in this case. The   FLSA allows plaintiffs to collect damages within a three-year statute of limitations if they can show that a defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendant's violations of the FLSA here were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. *See Villatoro v. Kim Son Restaurant, L.P.*, 286

---

[2] The names and addresses of potential class members are discoverable during the regular course of discovery even absent judicial notice because current and former class members are critical fact witnesses to this lawsuit. *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." 493 U.S. at 160; *see also Barton v. The Pantry, Inc.*, 2006 WL 2568462 (M.D.N.C. 2006) (ordering defendant to produce a list of plaintiffs' co-workers prior to conditional certification).

F.Supp.2d 807, 811 (S.D. Tex. 2003).

The facts concerning willfulness must be elicited during discovery, and Defendant may challenge the three-year statute of limitations again at an appropriate time. Thus, notice should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion. *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007); *Simpkins v. Pulte Home Corp*., 2008 WL 3927275 at p. 9 (M.D.Fla. 2008) (the determination whether that standard is met in this case is fact determinative and will not be made at the conditional certification stage). In addition, Plaintiff has sufficiently alleged in its Complaint that a willful violation has occurred to warrant reference to the FLSA's three-year statute of limitations. *See Longcrier v. HL-A Co., Inc*., 595 F.Supp.2d 1218, 1242 (S.D.Ala.2008) (approving the inclusion of a three-year statute of limitations in a court-facilitated notice when the plaintiffs adequately alleged willfulness); *See also Cryer v. Intersolutions, Inc*., No. 06-2032, 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007) (same).

## IX.   CONCLUSION

A primary reason for certifying an FLSA collective action is to ensure the joining of the other parties occurs in an "orderly, sensible, …efficient and proper way." *Hoffman-La Roche,* 493 U.S. at 170-71. Here, Plaintiff has demonstrated through copious and competent evidence that the "orderly, sensible…. efficient and

proper way" to address the similar claims of the similarly situated class members is

through an FLSA collective action.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue an Order:

(i)  conditionally certifying a class of current and former class members that includes "All carvers (churrasqueiros) who worked for Defendants nationwide and were paid pursuant to the "tip credit" (less than minimum wage plus tips) during the last three (3) years preceding this lawsuit", or alternatively, all churrasqueiros who worked for Defendants in  Atlanta, Georgia; Dunwoody, Georgia; Pittsburgh, Pennsylvania; Jacksonville, Florida; Irvine, California; Detroit, Michigan; and were paid pursuant to the "tip credit" (less than minimum wage plus tips) during the last three (3) years preceding this lawsuit

(ii)  directing Defendant to produce, in an electronic readable format, to undersigned counsel within fourteen (14) days of the Order granting this Motion a list containing the names, the last known addresses, and e-mail addresses[3] of putative class members who worked for Defendant within the last three years;

(iii) authorizing undersigned counsel to send notice, in the form attached hereto as **Exhibit A**, to all individuals whose names appear on the list produced by Defendants' counsel by first-class mail and e-mail;

(iv) providing all individuals whose names appear on the list produced by Defendant's counsel with forty-five days (45) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff, in the form attached hereto as **Exhibit B**; and

(v) any other relief that is just and appropriate.

---

[3] *See Denney v. Lester's, LLC*, 2012 WL 3854466 (E.D.Mo. 2012) (fair and proper notice will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms); *see also O'Donnell v. Sw. Bell Yellow Pages, Inc*., No. 4:11CV1107, 2012 WL 1802336, at *4 (E.D.Mo. May 17, 2012).

Respectfully submitted this the 8th day of December 2021.

**THE LEACH FIRM, P.A.**
631 S. Orlando Avenue, Suite 300
Winter Park, FL 32789
Telephone: 407-574-4999, Ext. 403
Facsimile:  833-423-5864

*/s/ Carlos V. Leach*
Carlos V. Leach, Esq.
FL Bar No. 0540021
cleach@theleachfirm.com

**FORESTER HAYNIE PLLC**
400 N. St Paul St, Suite 700
Dallas, TX 75201
Telephone: 214-210-2100
Facsimile:  469-399-1070

*/s/ Jay Forester*
Jay Forester, Esq.
TX Bar No. 24087532
jforester@foresterhaynie.com
Katherine I. Serrano, Esq.
TX Bar No. 24110764
kserrano@foresterhaynie.com

**RICHARD CELLER LEGAL, P.A.**
10368 W. SR 84, Suite 103
Davie, FL 33314
Telephone:  866-344-9243
Facsimile:   954-337-2771

*/s/Noah E. Storch*
Noah E. Storch, Esq.
FL Bar No. 0085476
noah@floridaovertimelawyer.com
Richard Celler, Esq.
FL Bar No. 0173370
richard@floridaovertimelawyer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION AND MEMORANDUM IN SUPPORT CERTIFICATION** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification to such filing to all counsel of record.

| | | |
|---|---|---|
| Paul Scheck, Esq.<br>Mary Ruth Houston, Esq.<br>**Shutts & Bowen LLP**<br>300 S. Orange Avenue<br>Suite 1600<br>Orlando, FL 32801<br>pscheck@shutts.com<br>mhouston@shutts.com | Patrick F. Hulla, Esq.<br>**Ogletree, Deakins, Nash,<br>Smoak & Stewart, P.C.**<br>4520 Main Street<br>Suite 400<br>Kansas City, MO 64111<br>Patrick.hull@ogletree.com | Victoria L. Vish, Esq.<br>**Ogletree, Deakins, Nash,<br>Smoak & Stewart, P.C.**<br>Preston Commons West<br>8117 Preston Road<br>Suite 500<br>Dallas, TX 75225<br>victoria.vish@ogletree.com |

I also certify that the foregoing has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local CV-10(a)(5).

Respectfully submitted this 8th day of December 2021.

*/s/ Adeash Lakraj*
Adeash Lakraj, Esq. (a*dmitted pro hac vice)*
Georgia Bar No. 444848
alakraj@theleachfirm.com

## **COMPLIANCE WITH LOCAL RULE 7.6**

Pursuant to Local Rule 7.6, Plaintiff's counsel certifies that he has contacted

Defendants' counsel in a good faith effort to resolve the issues raised by this Motion,

and Defendant opposes the motion but has not given any reason for its opposition.

Dated this 8th day of December 2021.

*/s/ Adeash Lakraj*
Adeash Lakraj, Esq. (*admitted pro hac vice)*
Georgia Bar No. 444848
alakraj@theleachfirm.com
